## CIRCUIT COURT OF SHENANDOAH COUNTY

Lucy P. Edmison,
Executor, et al.

v.

Elizabeth S. Vance et al.

February 26, 2002

Case No. (Chancery) CH01-197

BY JUDGE DENNIS L. HUPP

Lucy P. Edmison, Catherine Palmer Tessieri, and Nancy Palmer Clausen are the owners of a certain tract of real estate containing 79.29 acres located in Davis Magisterial District, Shenandoah County, Virginia. This real estate was devised to them from their mother, Elizabeth V. Palmer, and Lucy P. Edmison serves as Executor of that estate. These parties are the complainants in this suit in which they seek to establish a prescriptive easement over the lands of the defendants providing a means of ingress and egress to and from complainants' real estate and State Route 648 and to have the Court further determine whether the same right-of-way will serve individual tracts into which the dominant tract has been subdivided. Elizabeth S. Vance, Larry E. Vance, and Gary L. Vance are the owners of an adjoining tract of real estate containing 139.560 acres, more or less, and the existing roadway claimed as a prescriptive easement runs over their land. The defendants acknowledge and accept the existence of a prescriptive easement along the existing roadway providing a means of ingress and egress to a tract of approximately 84 acres improved by one single-family residence with outbuildings. They object to

having the roadway serve additional residences located on that original tract. A small portion of that original tract has been conveyed to Kenneth Edmison and Lucy Edmison, and they have constructed a dwelling house on that parcel. The subdivision of the remaining 79.29-acre tract results in three tracts containing 18.459 acres, 32.578 acres, and 28.260 acres, respectively. As I understand it, the Edmisons intend to add the 32.578-acre tract to their existing parcel, and the other two tracts will be sold. It is anticipated that, in the future, three dwellings will be served by the subject roadway, the original dwelling on one of the three tracts, the Edmison dwelling on one of the three tracts, and a third dwelling to be constructed after sale of the third tract.

This case was set for trial on January 31, 2002. The parties reached a written stipulation of facts and presented it to the Court. The hearing was confined to argument of counsel. This was certainly an efficient and practical way to proceed, and I commend counsel and the parties for choosing to do so. The question presented to the Court, as phrased in the written stipulation of facts, is may the prescriptive right-of-way be used to serve additional residences located on tracts of real estate subdivided from the original dominant tract?

The nature and character of a prescriptive easement are defined by the use made thereof. *Virginia Hot Springs Co. v. Lowman*, 126 Va. 424, 101 S.E. 326 (1919). A new use of the easement may be permitted if it is "in all respects of the same nature and character as the old," the difference being in degree only, and "no additional burden is put upon the servient estate." *Id.* at 430. Those claiming the prescriptive easement have the burden of showing that the proposed change is one of degree only and not a change in the nature or character of the use and that the change imposes no additional burden on the servient estate. *McNeil v. Kingrey*, 237 Va. 400, 406, 377 S.E.2d 430 (1989). It does not help the complainants' case that there is simply no evidence that the increased use would be an additional burden to the property. *Id.* at 405-06. At the risk of sounding coy, in the face of this burden, the complainants must affirmatively prove the negative.

In the present case, we are left with speculation for the most part as to the increased use, its nature and extent, and how it will affect the servient tract. While the plat subdividing the dominant tract was made in May 2001 and has been recorded in the Clerk's Office of this Court, it is my understanding that the roadway still serves only one dwelling currently inhabited. It is certainly not now serving three dwellings as proposed. Hence, in the present case, the complainants could do no more in addressing the question of increased burden than they have done, that is, describing the proposed subdivision and anticipated use of the individual tracts and then arguing, as a matter of law,

that this will be a change in the degree of use and not in the nature and character of use and that the change will impose no additional burden on the servient tract.

From my review of the cases, it seems to me that the required analysis involves a two-fold inquiry, the first part being unitary and the second binary. (1) Will the new use be different in nature and character from the old use? Here, the answer is no. (2) Is the new use a change in degree only and does it impose an additional burden on the servient tract? Here, I believe the proposed use is a change in degree only since the proposed right-of-way will still provide a means of ingress and egress to and from residential/agricultural property. Resolution of the remaining issue is not so easy.

Will the increased use resulting from three dwellings located on three individual tracts of real estate increase the burden on the servient estate? Again, on this issue, the complainants have the burden of proof, and, in addressing this point, they rely on the law. To this end, the complainants have cited several opinions from local circuit courts. In *Hastings v. Franklin*, 39 Va. Cir. 340 (Shenandoah County 1996), the Honorable Perry W. Sarver, Judge, recited the well-settled principles of law and found that the proposed change in use of the dominant tract and the resulting change in use of the prescriptive easement would be more than a matter of degree and would be "a substantial variation from its prior use . . . and not for the purposes for which it (the easement) was created." (Material in parentheses added.) In that case, the owners of the dominant tract intended to begin a commercial timbering operation on land previously used for hunting, cutting fire wood, and taking timber in small quantities for the owners' use.

In *Simmons v. Morris*, Circuit Court of Shenandoah County, In Chancery No. 3935 (1991), the Honorable John E. Wetsel, Jr., Judge, found the existence of a prescriptive easement, noting that the use of the dominant tract for a permanent residence where it had not been so used in the past does not affect the result in the case, implicitly finding that the resulting increase in use of the easement was a matter of degree only and did not increase the burden on the servient tract.

In *Mitchell v. Catlett*, Circuit Court of Warren County, In Chancery No. 91-0115 (1991), Judge Wetsel found the existence of a prescriptive easement and went on to state that the use of the dominant tract as a permanent residence "as opposed to . . . more casual and infrequent use of the property . . . has no effect on the result in this case." In that case, he specifically found that the increased use was one of degree only and would put no additional burden on the real estate.

The complainants cite *Phillips v. Goetz*, Circuit Court of Shenandoah County, In Chancery No. 1942 (1982), but acknowledge that the principles for which this case is cited are found in dicta. The Honorable Henry J. Whiting, then Circuit Court Judge, thoroughly discussed existing case law concerning changes in use of a prescriptive easement and the effect thereof. It is most noteworthy for our purposes here that Judge Whiting believed that the analysis of the issues in respect to prescriptive easements was different from that in respect to deeded or granted easements. I think so too.

The complainants have relied fairly heavily on the case of *Hayes v. Aquia Marina, Inc.*, 243 Va. 255, 414 S.E.2d 820 (1992), wherein the Virginia Supreme Court found that the expansion of a marina from 84 boat slips to 280 boat slips would affect the easement serving the marina in degree only and would not overburden the servient tract. In reaching this conclusion, however, the Court specifically recited that "when an easement is created *by grant or reservation* and the instrument creating the easement does not limit the use to be made of it, the easement may be used for 'any purpose to which the dominant estate may then, or in the future, reasonably be devoted'." *Id.* at 258. (Emphasis added.) In this regard, the court cited *Cushman Corp. v. Barnes*, 204 Va. 245, 129 S.E.2d 633 (1963), wherein the Virginia Supreme Court specifically stated that subdivision of the dominant tract does not mean, in and of itself, that the servient tract will be overburdened. Judge Wetsel also cited this case in *Mitchell v. Catlett* for the same proposition. *Cushman*, however, also dealt with an easement by grant and not one by prescription. Contrary to the statement quoted from *Hayes* in respect to deeded easements, prescriptive easements are limited by the use made of same. *Virginia Hot Springs Co. v. Lowman, supra*; *Pettus v. Keeling*, 232 Va. 483, 352 S.E.2d 321 (1987); and, *McNeil v. Kingrey, supra*. Even if, upon proof of the requisite use of the way for the statutory period, we presume a lost grant; the nature of the grant and the terms thereof are defined by the use. See *McNeil v. Kingrey* at 404 and *Baldwin v. Boston & M. R. Co.*, 181 Mass. 166, 63 N.E. 428 (1902), cited approvingly in *Virginia Hot Springs v. Lowman* at 430.

None of the circuit court cases cited by the complainants dealt with a subdivision of the dominant tract. Judge Wetsel's citation of *Cushman* was made in support of the proposition that changes in use may occur which are matters of degree and not in character; however, that citation does not serve as a premise for his decision in the case and may be viewed as dicta. I have found two Virginia cases dealing with the subdivision of the dominant tract, one being *Cushman* and the other being *Linkenhoker v. Graybill*, 80 Va. 835 (1885), neither of which dealt with easements by prescription. Cushman as

noted, involved an easement by grant, and *Linkenhoker* dealt with an easement by necessity.

I am persuaded by several out-of-state decisions. We share with Massachusetts the distinction of being among the thirteen original states, and the common origin of our real estate law and the fairly ancient principles governing same lend some weight to the decisions of that court in respect to the subject matter at hand. In *Parks v. Bishop*, 120 Mass. 340 (1876), the court found that a prescriptive easement had been established serving a factory and storehouse on two lots used in conjunction with one another. The court went on to describe situations involving a change in the condition and character of the dominant estate which would impose a greater burden on the servient estate, and one of those was the subdivision of the dominant estate into building lots. The Massachusetts court drew the same distinction in *Baldwin v. Boston & M. R. Co.*, 181 Mass. 166, 63 N.E. 428 (1902). There the Court found that the erection of two additional residential structures on the dominant tract where only one had existed previously, resulting in five families occupying that tract rather than one, did not overburden the servient tract over which a "footway" ran. The Court went on to note that the result may have been different if the dominant tract had been "divided into house lots." *Id.* at 169, 63 N.E. 428, 430. I suppose the distinction drawn in each of these cases appears in dicta; however, I think it is worthy of note that the Court viewed a subdivision of the dominant tract as being a change in the character of the dominant tract itself which would result in an intolerable increase of burden on the servient tract.

In *Wright v. Horse Creek Ranches*, 697 P.2d 384 (Colo. 1985), the Colorado Supreme Court, in finding that proposed new uses of a prescriptive easement would be materially different from the previous use and would increase the burden on the servient tract, noted, among other things, that the dominant tract had been changed from a ranch to a recreational/residential development consisting of several smaller tracts owned by different individuals. The Idaho Supreme Court also dealt with a situation where parcels had been sold off of the dominant tenement in the case of *Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870 (1977). In that case, the court held that the increased use of the prescriptive easement was impermissible. While one of the subdivided tracts in that case was used for the operation of a commercial greenhouse, the Court seemed to be just as concerned with the four residential tracts conveyed off of the parent tract. (I note that *Gibbens* was called into question in a dissent in a later case, but, in doing so, the dissent argued that the question of enlargement of an easement should not be one of law but rather a question of fact. See *Villager Condominium Assn., Inc. v.*

*Idaho Power Co.*, 121 Idaho 986, 829 P.2d 1335 (1990)). The Delaware Supreme Court has specifically dealt with the increased burden on the servient tract where building lots had been sold off the dominant tract, holding that the purchasers of the building lots could not use the prescriptive easement as a means of ingress and egress. *Biggs v. Wolfe*, 40 Del. Ch. 212, 178 A.2d 482 (1962).

None of the cases I have reviewed where the courts have allowed the increased use of a prescriptive right of way arising from the construction of additional residences on the dominant tract involves the subdivision of the dominant tract. I cite for examples, *Orvis v. Garms*, 638 S.W.2d 773 (Mo. App. 1982), and *Burns v. Goff*, 164 W. Va. 301, 262 S.E.2d 772 (1980). It appears that the state which has been most liberal in permitting additional uses of prescriptive easements is California. Several California cases are cited in *American Law Reports*, specifically 79 A.L.R. 4th 604, at 624-27. It does not appear that any of these cases deals with subdivision of the dominant tract, and the California courts apparently factor into their analysis changes in the surrounding community. Such a consideration has been specifically rejected by the Virginia Supreme Court. *McNeil v. Kingrey* at 406-07.

In conclusion, it seems to me that subdivision of the dominant tract into three individual agricultural tracts and increasing the number of dwellings served by the prescriptive easement from one to three necessarily increases the burden on the servient tenement unless this is rebutted by the evidence. Here, the complainants have not carried their burden. Indeed, it may be impossible to do so in a case such as this where we are dealing with anticipated or projected uses of the dominant tract and easement rather than current or customary uses. Who knows what additional burden may be placed on the easement and thus on the servient tract by three individually-owned "farmettes" each improved by a dwelling where there had previously been one larger farm improved by one dwelling? The complainants anticipate that there will be an increase in the degree of use of the roadway, and they predict that this change will not be overly burdensome on the servient tract. I simply do not believe that I can make such a finding as a matter of law. While seemingly reasonable, the complainants' offer, on behalf of themselves and their successors in interest, to be forever limited to a subdivision of three tracts does not affect my analysis.

I do find there is a prescriptive easement along the existing roadway to State Route 648 providing a means of ingress and egress to and from the original 84-acre tract as agreed and stipulated to by the parties.

No issue was raised before me concerning whether the prescriptive easement lawfully serves the separate Edmison tract (carved from the original 84-acre tract), and, for this reason, I do not specifically rule on this.